IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| DONALD W. WHITEHEAD,<br><br>                  Plaintiff<br><br>VS.<br><br>EDWARD H. BURNSIDE,<br><br>                  Defendant | NO.  5:08-CV-193 (CAR)<br><br>PROCEEDINGS UNDER 42 U.S.C. §1983<br>BEFORE THE U. S. MAGISTRATE JUDGE |

# O R D E R

Before the court is a motion filed on behalf of defendant Edward H. Burnside which seeks the imposition of sanctions upon plaintiff Donald W. Whitehead and his attorney McNeill Stokes, Esq. Tab #17. This motion was filed pursuant to the provisions of Rule 11 of the Federal Rules of Civil Procedure and alleges that the proceedings in this matter have been unreasonably and vexatiously multiplied, thus requiring the imposition of sanctions upon Mr. Stokes pursuant to 28 U.S.C. § 1927. Plaintiff and his counsel have responded to this motion (Tab #20 and Tab #22), and the defendant has replied thereto (Tab #25 and Tab #26).

The gravamen of the defendant's complaint against Mr. Stokes is that he failed to remove from his complaint the allegations set forth in paragraphs 7. and 8. of plaintiff's complaint after having been notified by counsel for the defendant that these allegations were, in fact, false.[1]

---

[1] Defendant Burnside's MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SANCTIONS states, *inter alia*:

> *Since the filing of his Complaint, Plaintiff has been provided with documentary evidence establishing, without doubt, that Defendant Burnside did not participate in the alleged acts. Specifically, in compliance with Rule 11 of the Federal Rules of Civil Procedure, Plaintiff's counsel was provided with the affidavit of Dr. Dellacona, the emergency room doctor referenced in Plaintiff's Complaint, which states that: (1) Plaintiff did not require immediate surgery on October 20, 2006; (2) Dr. Dellacona did not recommend immediate surgery on October 20, 2006; and (3) Dr. Dellacona did not seek Defendant Burnside's approval for surgery, or otherwise speak to Defendant Burnside, on October 20,* 2006. (Affidavit of Dr. Salvatore J. Dellacona, ¶¶ 7-11). (Emphasis added).

On July 10, 2009, the undersigned conducted an inquiry into these matters and issued an order which provided, *inter alia*, "with the consent of the plaintiff, a RECAST COMPLAINT shall be filed omitting therefrom the language of paragraph 7. of the [original] complaint which reads '. . . and then immediately ordered preparation for surgery to set the Plaintiff's broken left knee cap' <u>and</u> all of paragraph 8. of the [original] complaint." This language was ordered stricken by virtue of the admission of Mr. Robert Cullen, counsel representing Mr. Stokes at the Show Cause Hearing, that Mr. Stokes had never interviewed or otherwise contacted Dr. Dellacona who was said in the original complaint to have "immediately ordered preparation for surgery" on plaintiff's knee and who allegedly was denied approval for this surgery by defendant Dr. Burnside who "refused to allow the surgery on Plaintiff's knee cap . . . and ordered that the Plaintiff be returned to the prison without treatment."

Thereafter, plaintiff filed his RECAST COMPLAINT without the offending language in paragraphs 7. and 8. <u>However</u>, plaintiff attached to his RECAST COMPLAINT the very same Declaration of Dr. William S. Thompson, M.D. which had been attached to his original complaint. That Declaration contains the following language, to-wit:

> *Donald Whitehead arrived to the hospital emergency room at Oconee regional Hospital on October 20, 2006 with an apparent injury to the left knee. Upon arrival at emergency at Oconee Regional Hospital, the emergency room physician, Dr. Salvatore Dellacon, MD, ordered x-rays that disclosed the fracture of the patient's left petella (sic) and then immediately ordered preparation for surgery to set the patient's broken left patella (knee cap).*

---

[1](Continued)  In the face of this documentary proof establishing that Dr. Dellacona did not recommend immediate surgery or contact Defendant Burnside on October 20, 2006, Plaintiff and his attorney continue to pursue claims against Defendant Burnside alleging otherwise. Plaintiff has offered nothing to support his continued allegations of denial and/or delay of treatment against Dr. Burnside for the alleged refusal to allow Dr. Dellacona to perform surgery. Thus, these allegations in Plaintiff's Complaint have no factual support and run afoul of FED. R. CIV. P. 11 and 28 U.S.C. § 1927.

Defendant Burnside has complied with the "safe harbor" provision of FED. R. CIV. P. 11(C)(1)(A) by serving Plaintiff's counsel with an unfiled copy of this motion via certified mail on November 18, 2008, along with a copy of Dr. Dellacona's affidavit. More than twenty-one days have elapsed from service of the Rule 11 motion, and Plaintiff and his counsel have neither withdrawn the frivolous allegations against Defendant Burnside. Defendant Burnside, therefore, files this motion seeking an award of sanctions against Plaintiff and his attorney under Rule 11 and 28 U.S.C. § 1927.

> *The emergency room physician sought approval from Dr. Burnside who refused to allow the surgery on the patient's patella at Oconee Regional Hospital and ordered that the (sic) Whitehead be returned to the prison without treatment for his broken petella (sic).*

The above-quoted language is substantially the same language which the court directed be removed from paragraphs 7. and 8. of plaintiff's [original] complaint and which prompted the defendant to file a MOTION TO STRIKE PLAINTIFF'S ATTACHMENT.

## MOTION FOR SANCTIONS

The undersigned finds that the defendant's contention that the inaction of counsel for the plaintiff in curing what was demonstrated to be patently false in paragraphs 7. and 8. of plaintiff's original complaint requires that sanctions be imposed. Counsel for plaintiff had reasonable notice that the allegations set forth in these paragraphs had no basis in fact yet chose to maintain them in his complaint and require the defendant to unnecessarily pursue the matter in court. In requiring that a hearing be convened to resolve the issue, plaintiff's counsel unnecessarily required defendant's counsel to expend time and energy preparing for the hearing, making legal argument, and traveling to court for a resolution of an issue that could have and should have been disposed of by simply removing the offending language from the complaint. The ultimate resolution agreed to by counsel for the plaintiff at the hearing was just that— removal of the offending language from the complaint.

Counsel for the defendant has provided the court with an itemization of time she contends was reasonably spent because of plaintiff's counsel's refusal to remove the offending false accusations. Tab #36. Counsel for plaintiff has responded thereto. Tab #43. Upon careful consideration of the arguments of counsel for the parties, the court finds that counsel for the defendant is entitled to the following reimbursement for time directly expended in litigating the issue of removal of the improper language from paragraphs 7. and 8. of plaintiff's original complaint as follows:

| | |
|---|---|
| Review of Oconee Regional Medical Records | .50 hours |
| Preparation of Dellacona's affidavit | 1.25 hours |
| Legal Research | 3.5 hours |
| Good Faith Letter/Response | .50 hours |
| Preparation for Show Cause Hearing | 2.50 hours |
| Show Cause Hearing And Travel Time | 5.50 hours |
| Itemization Brief and Exhibit | 2.00 hours |
| TOTAL = | 15.75 hours |

The court further finds that counsel for the defendant is entitled to attorney's fees charged at the rate of $110.00 per hour. The court notes that counsel for the defendant is employed as an attorney by the State of Georgia and is paid an annual salary as opposed to being paid by the hour. Nevertheless, it is clear that time spent on the issue at hand caused by the actions of counsel for the plaintiff unnecessarily took time away from other work assigned to her. Accordingly, the court awards the sum of $1,732.50 in attorneys fees to be paid by counsel for plaintiff for time which the undersigned believes to be directly related to the issue at hand.

The court further agrees with counsel for the defendant that the actions of plaintiff's counsel unreasonably and vexatiously multiplied the time required to be spent by counsel for the defendant and by the court requiring the imposition of monetary sanctions against counsel for plaintiff. To that end, the court directs MacNeill Stokes, counsel for plaintiff to pay a sanction in the amount of $1,000.00.[2]

---

[2] The undersigned wishes to make it clear that the sanctions imposed herein are predicated entirely upon actions by counsel for the plaintiff through the date of the hearing of July 10, 2009.

## MOTION TO STRIKE

On July 21, 2009, the defendants filed a **MOTION TO STRIKE PLAINTIFF'S ATTACHMENT**, complaining of the inclusion of the language in the Declaration hereinabove quoted attached to plaintiff's RECAST COMPLAINT.  Tab #40.   As has been noted above, plaintiff appended to his RECAST COMPLAINT the very same Declaration of Dr. Thompson which contained virtually the same offending language which plaintiff, through counsel, had consented to remove from his complaint.  In short, it appears to the court that by continuing to rely on this Declaration in support of his RECAST COMPLAINT (Restated Complaint), plaintiff Whitehead is attempting to come into the house through the back door when he has been prohibited from entering the house through the front door.  This tactic is inappropriate and cannot be permitted..

Dr. Thompson's Declaration provides, *inter alia*:

*Donald Whitehead arrived to the hospital emergency room at Oconee regional Hospital on October 20, 2006 with an apparent injury to the left knee.  Upon arrival at emergency at Oconee Regional Hospital, the emergency room physician, Dr. Salvatore Dellacon, MD, ordered x-rays that disclosed the fracture of the patient's left petella (sic) and then immediately ordered preparation for surgery to set the patient's broken left patella (knee cap).*

*The emergency room physician sought approval from Dr. Burnside who refused to allow the surgery on the patient's patella at Oconee Regional Hospital and ordered that the (sic) Whitehead be returned to the prison without treatment for his broken petella (sic).*

**Accordingly, the following language is stricken from said Declaration:**

*. . . and then immediately ordered preparation for surgery to set the patient's broken left patella (knee cap).*

*The emergency room physician sought approval from Dr. Burnside who refused to allow the surgery on the patient's patella at Oconee Regional Hospital and ordered that the (sic) Whitehead be returned to the prison without treatment for his broken petella (sic).*

Dr. Thompson further states in his Declaration that his affidavit is given "based upon personal knowledge obtained through my education, knowledge, training, and experience <u>and upon a thorough review of the medical records and x-rays of Donald Whitehead from Oconee Regional Hospital</u> that have been provided to me." (Emphasis added). He goes on to state that "[t]he following <u>facts</u> appear <u>in</u> <u>and</u> <u>from</u> <u>the</u> <u>records</u> and are noted only in that they provide a very brief overview of the care and treatment rendered and that are not intended to be in any way comprehensive, nor do they recite the entirety of the records." (Emphasis added).

Dr. Thompson thereafter states <u>as</u> <u>a</u> <u>fact</u> that "[u]pon arrival back at the prison no pain medicine was given the (sic) Whitehead who was in pain in his knee and his entire leg."

Dr. Thompson further affies:

> <u>*At*</u> <u>*the*</u> <u>*prison*</u> *Dr. Burnside refused to examine Whitehead's knee and failed to refer him for surgery for his broken patella for leaving Plaintiff in constant pain until Whitehead finally was seen by an orthopedic surgeon on November 7, 2006, Dr. Clarence Fossier, operated and insert (sic) two screws in his knee and put a cast on his knee.* (Emphasis added).

Dr. Thompson then renders his opinion as to the standard of care and treatment provided by defendant Dr. Burnside, once again stating that his opinion is "[b]ased upon my review of the <u>medical</u> <u>records</u> . . . ." (Emphasis added).

Clearly, Dr. Thompson would have the court believe that his Declaration is made based upon his review of the <u>medical</u> <u>records</u> <u>and</u> <u>x-rays</u> of Donald Whitehead at Oconee Regional Hospital. It has already been established that his statements as to Dr. Dellacona's immediately ordering preparation of Mr. Whitehead for surgery and Dr. Burnside's refusal to allow surgery are not supported by the medical records of Oconee Regional Hospital.  It is also apparent to the undersigned that Dr. Thompson's statement of what occurred upon Mr. Whitehead's arrival back at the prison is not supported by the <u>medical</u> <u>records</u> <u>from</u> <u>the</u> <u>hospital</u> as he stated under oath. Hospital records would have no notation whatsoever of what occurred or did not occur <u>after</u> Mr. Whitehead left the hospital. Certainly, they would have no notations of events occurring at the prison.  Hence, Dr. Thompson's statement is found to be false and totally unsupported.

For the foregoing reasons, defendant's **MOTION TO STRIKE** (Tab #40) is also GRANTED to the extent that **the following language is stricken from the Declaration:**

*Upon arrival back at the prison no pain medicine was given the (sic) Whitehead who was in pain in his knee and his entire leg.*

*At the prison Dr. Burnside refused to examine Whitehead's knee and failed to refer him for surgery for his broken patella for leaving Plaintiff in constant pain until Whitehead finally was seen by an orthopedic surgeon on November 7, 2006, Dr. Clarence Fossier, operated and insert (sic) two screws in his knee and put a cast on his knee.*

SO ORDERED AND DIRECTED, this 9th day of MARCH, 2010.



                                          CLAUDE W. HICKS, JR.
                                          UNITED STATES MAGISTRATE JUDGE